## Commonwealth v. Smith

*Thomas Scott Moore, assistant district attorney,* for the Commonwealth.
*Jack W. Cline,* for defendant.

ACKER, *P.J.,* July 30, 1990—We have for consideration two cases involving the interpretation of section 2310 of the Game and Wildlife Code. Defendants concede that they fall under the classification of 34 Pa.C.S. §2310(a)(1), a fifth-degree summary offense.

On November 25, 1989, Phyllis R. Dandruff and James Donatelli were employed by the state to enforce the Game Laws. They were on "night patrol" at about 11:48 p.m., hidden in a secluded area. They observed a vehicle coming east on Millbrook Road with its lights on deer in front of the law enforcement officers. The car continued to proceed east on Millbrook and turned south on Hazard Road directly in front of the officers. Defendant Michael S. Stewart was operating a spotlight. On that night defendant Michael S. Stewart, who lived at 326 Edgewood Drive, Jackson Center, was at the residence of his parents at R.D. 1, Jackson Center. A friend, Jeffrey R. Smith, of 5719 Kreefe Street, Pittsburgh, Pennsylvania, had come to Mercer County to hunt with Michael Stewart. The two traveled in a vehicle together to the field where they planned to hunt the next day. At this time Jeffrey Smith had a .30-30 rifle and was in hunting clothes. The rifle, however, was in the trunk of the car in a case along with the shells. A .30-06 Winchester with a box of shells was found in the back seat of the vehicle. Jeffrey Smith was not in hunting clothes at the time of the spotting. His was a new gun which they had thrown in the back seat of the car. No effort was made to sight upon or fire the guns. They were not taken out of the car at any time and were not used at any time in spotting the deer. They were simply being transported in the vehicle.

The first question to be resolved is whether section 2310(c) of the Game and Wildlife Code should be interpreted to impose the greater penalties provided therein when no game is taken, but when defendants possessed a firearm. The second question to be resolved is whether the firearm in question

should be classified as contraband as defined in 34 Pa.C.S. §2310(d).

## PENALTY

Defendants concede that they are guilty of violating 34 Pa.C.S. §2310(a)(1), which states:

"(a) *General rule*—Except as set forth in subsection (b), it is unlawful for any person or group of persons to engage in any of the following activities to any degree:

"(1) Cast the rays of an artificial light of any kind on any game or wildlife or in an attempt to locate any game or wildlife while on foot, in any vehicle, or its attachments, or any watercraft or any airborne craft while in possession of a firearm of any kind, or a bow or arrow, or any implement or device with which any game or wildlife could be killed or taken even though no game or wildlife is shot at, injured or killed."

In addition to section 2310(a)(1), the Commonwealth contends that defendants have also violated section 2301(c), which states:

"(c) *Penalties*—A violation of this section is a summary offense of the fifth degree. In addition thereto, if any attempt is made to take any game or wildlife or if any firearm or implement capable of killing or wounding game or wildlife is possessed, the person or persons shall be sentenced to the additional penalties of:

"(1) For each endangered or threatened species, a fine of $1,000 and forfeiture of the privilege to hunt or take game or wildlife anywhere within this Commonwealth for a period of 10 years.

"(2) For each elk or bear, a fine of $800 and forfeiture of the privilege to hunt or take game or

wildlife anywhere within this Commonwealth for a period of three years.

"(3) For each deer, a fine of $500 and forfeiture of the privilege to hunt or take game or wildlife anywhere within this Commonwealth for a period of three years.

"(4) For each bobcat or otter, a fine of $300 and forfeiture of the privilege to hunt or take game or wildlife anywhere within this Commonwealth for a period of three years.

"(5) For each turkey or beaver, a fine of $200 and forfeiture of the privilege to hunt or take game or wildlife anywhere within this Commonwealth for a period of two years.

"(6) For each other bird or animal, a fine of $100 and forfeiture of the privilege to hunt or take game or wildlife anywhere within this Commonwealth for a period of one year."

It is the Commonwealth's position that the mere possession of a firearm capable of killing or wounding game or wildlife is a violation of only section 2310(a)(1). If so, because deer were the animals spotted, the Commonwealth argues section 2310(c)(3) is applicable. This requires a fine to be imposed of $500 plus the denial of the privilege to hunt for three years.

We begin our inquiry by recognizing that the Game and Wildlife Code is clearly penal in nature and therefore must be strictly construed in favor of the accused. 1 Pa.C.S. §1928(b)(1). If two inconsistent interpretations of a penal statute are both reasonable, the benefit of doubt must inure to defendant's position. *Commonwealth v. Teada,* 235 Pa. Super. 438, 344 A.2d 682 (1975).

In the instant case the Commonwealth relies on the literal reading of section 2310(c) in support of

their request for additional penalties. Since the facts are clear that no actual attempt was made by defendants to take any game or wildlife, the Commonwealth is relying solely on that portion of section 2310(c) which states "or if any firearm or implement capable of killing or wounding game or wildlife is possessed."

It is our conclusion that a literal reading of the word "or" after the portion of section 2310(c) which speaks in terms of an actual attempt is unreasonable and contrary to the intentions of the legislature. The Pennsylvania Supreme Court has held the statutory construction of the word "or" in *Garratt v. Philadelphia,* 387 Pa. 442, 127 A.2d 738 (1956) to be:

" 'Or' in its ordinary usage and meaning clearly and undoubtedly means 'or.' 'Or' can only be construed to mean 'and' when to give the word 'or' its ordinary meaning would be to produce a result that is absurd or impossible of execution or highly unreasonable or would manifestly change or nullify the intention of the legislative body." *Commonwealth v. Giugliano,* 351 Pa. Super. 162, 505 A.2d 317 (1986).

It would be highly unreasonable to sentence a defendant to such a harsh penalty without recognizing the extreme differences between the act of actually attempting to kill wildlife and the act of merely possessing the instrument to do so. The Commonwealth asks us to ignore these differences but a careful reading of 34 Pa.C.S. §2310 leads us to conclude that the legislature when adopting section 2310 intended to impose on a defendant the harsher penalty only when an actual attempt to take wildlife is made.

The legislature's true intent can be seen by considering the six categories of penalties which form a part of section 2310(c). These six categories differ in

range of penalty based on the type of wildlife or game the violator is attempting to take. Taking into consideration the list of degree of penalties, it is apparent that section 2310(c) was meant to read, "any attempt to take wildlife with a firearm or any other implement capable of killing." It is unreasonable to conclude that "mere possession of a firearm or implement capable of killing" is also an offense of 2310(c) which should be applied to one of the six categories of punishment. If mere possession were enough, and no attempt be made, in many cases there would be no way of determining which of the six penalty categories to apply.

Fortunately, this problem need not arise because section 2310(a)(1) speaks of merely possessing a firearm or any implement which could wound or kill wildlife while in the process of spotlighting. The violation of wrongly possessing these instruments while spotlighting is a summary offense of the fifth degree. If the defendant carries his wrongful act a step further and actually attempts to take wildlife while spotlighting, then the additional penalties of 2310(c) come into play depending on the type of game or wildlife involved.

The Commonwealth wishes to impose a penalty provided by subsection (c)(3) for having firearms in the vehicle while spotting deer. That is the most that the Commonwealth established against defendants. By subsection 3, "for each deer," there is a fine of $500 and a loss of hunting privileges for three years. There were multiple deer sighted, in this case the exact number not being testified to. We cannot believe that the legislature intended to impose a fine of $500 for each deer that the spotting light cast its beam upon. It must be related to an actual attempt to take the deer or possess it.

Wherefore, we conclude that the penalty is not logically applied to the spotting of deer where there is no actual attempt to take the deer with a firearm or other implement capable of killing or wounding.

## FORFEITURE

The Commonwealth seeks to classify the firearm possessed by defendant Michael Stewart as contraband and requests that the court order the firearm to be forfeited to the commission. Their basis for this request is that the definition for contraband in 34 Pa.C.S. §102 includes firearms held in the possession of defendants. The Commonwealth concedes that the firearm in question was not being used (employed or put into action) when defendants were arrested.

The complete definition of contraband in 34 Pa.C.S. §102 is as follows:

" 'Contraband.' Any game or wildlife, or part or product thereof, or any personal property, including, but not limited to, firearms, traps, boats, decoys, vehicles and attachments and property designed for use or used in hunting and taking game or wildlife, when the game or wildlife, or part of product thereof, or the personal property is *held in possession,* transported or used or taken *in violation of any law,* the enforcement or administration of which is vested in the commission. *Contraband shall be forfeited to the commission to be disposed of at the discretion of the director.*" (emphasis supplied)

Section 102 specifically speaks in terms of firearms being held in possession, transported or used in violation of any law.

In the instant case defendant is accused of violating section 2310 and included in section 2310 is a

specific paragraph, 34 Pa.C.S. §2310(d), dealing with contraband in connection with violation of section 2310. Section 2310(d) specifically states that included as contraband are firearms unlawfully used by defendants. This definition which narrows the definition included in section 102 clearly does not include firearms merely held in possession by defendants. The Commonwealth has conceded that the firearm was not actually used and based on a careful reading of 34 Pa.C.S. §2310(d), we therefore deny forfeiture.

The weapon attributable to defendant, Michael S. Stewart, is that of his father. There was no evidence presented to the contrary and the court accepts that as being true. Therefore, there cannot be forfeiture as to that weapon in any event. There can, of course, be a forfeiture of the spotting equipment used. For the reasons as stated, however, neither of the two weapons involved nor the ammunition therefore was used by either defendant and therefore cannot be forfeited.

Hence, this

## ORDER

And now, July 30, 1990, it is hereby ordered and decreed that defendants, Jeffrey R. Smith and Michael S. Stewart, are guilty of casting rays of artificial light on game in an attempt to locate the game while in a vehicle. A fine is imposed upon each of them of $100 and their hunting privileges are forfeited for a period of one year, this being a summary offense of the fifth degree.

In that there was no attempt to take any game or wildlife and that the firearms possessed by the parties in the vehicle were not used for the purpose of spotting or taking into possession any deer, it is

concluded that the penalties requested by the Commonwealth arising from 34 Pa.C.S. §2310(c) are inappropriate to the facts of the case and the applicable law. Further, that there is no forfeiture of either weapon, that of the defendant Stewart being the property of his father, but in any event neither weapon was used in the spotting or taking of game.